IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LLOYD MONTREL LORNE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. CIV-13-1028-F |
| | ) |
| JANET DOWLING,[1] | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

Petitioner, appearing through counsel, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. 1. United States District Judge Stephen P. Friot referred the matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Doc. 3. Respondent filed a Response, Doc. 13, with the jury-trial transcripts (TR), original record (OR), and evidentiary hearing transcript (EH), and Petitioner did not reply. For the reasons set forth below, it is recommended that the Petition be denied.

## BACKGROUND

In Stephens County, Oklahoma, in Case No. CF-2008-276, the State charged Petitioner with distribution of a controlled dangerous substance within 2000 feet of a park, after a former felony conviction. OR at 1-2.[2] The jury convicted Petitioner and on January 26, 2010, the trial court sentenced him to thirty years' imprisonment. *Id.* at 123. Petitioner appealed, alleging trial

---

[1] Petitioner listed Respondents as Terry Martin, Warden at Dick Conner Correctional Center, and the Oklahoma Attorney General. Doc. 1, at 1. Although the habeas petition form required Petitioner to list Oklahoma's Attorney General as a respondent, *see id.*, the only proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242. In this case, the only proper respondent is Janet Dowling, Petitioner's current Warden at the Dick Conner Correctional Center.

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

1

counsel was constitutionally ineffective for failing to investigate and call Gloria Wiggins and Franchascha Burrell as witnesses, Doc. 13, Ex. 1, *passim*, and the Oklahoma Court of Criminal Appeals (OCCA) remanded the case to the trial court for an evidentiary hearing. *Id.* at Ex. 4. After an evidentiary hearing and a supplemental hearing, the trial court issued Findings of Fact and Conclusions of Law. *Id.* at Ex. 5. Petitioner then filed an amended direct appeal brief, arguing only that trial counsel was ineffective for failing to investigate and call Gloria Wiggins as a witness. *Id.* at Ex. 6, *passim*. Reviewing only that claim, the OCCA affirmed Petitioner's conviction. *Id.* at Ex. 8, at 1-6.

## **PETITIONER'S CLAIM**

Petitioner's attorney raises one, one-sentence ground for relief, claiming: "Ineffective Assistance of Counsel for failing to conduct a proper investigation and to call two witnesses for the defense: Gloria Wiggins and Franschascha Burrell." Doc. 1, at 5. The attorney then explains the claim is "partially exhausted as to Wiggins, but not as to Burrell." *Id.* Petitioner's attorney provides no further explanation, did not file a brief in support, and did not reply to Respondent's Response.

That Petitioner's attorney filed a Petition with no supporting facts or argument, and included an unexhausted claim, is of grave concern. The undersigned considered dismissing the entire Petition as conclusory and vague, or ordering Petitioner to amend the Petition to delete the unexhausted argument and adequately explain and support his remaining claim. However, based on the Petition's filing date, and because Respondent has already prepared a Response and Petitioner's underlying arguments are clear from the state court records, the undersigned has elected to address Petitioner's claim on the merits. To do so, the undersigned has reluctantly

2

looked to the state court pleadings to ascertain Petitioner's arguments. Those arguments are discussed below.

## RELEVANT BACKGROUND

Ms. Chris Ebony Pasley purchased illegal drugs from an undercover officer. TR, Vol. I, at 154, 161. Using that illegal transaction as leverage, Investigator Justin Scott induced Ms. Pasley to participate in a "controlled purchase" from Petitioner. *Id.* at 161-62, 165-66, 168. Franshasca Burrell accompanied Ms. Pasley, and the two women bought crack cocaine from Petitioner near Douglas Park. *Id.* at 166-68, 173-77.

Ms. Pasley testified at trial she had been in a sexual relationship with Petitioner for six or seven years at the time of the controlled buy and had only worked with Investigator Scott to avoid charges for her own illegal drug purchase. TR, Vol. II, at 250-56. Ms. Pasley told the jury she was currently serving a prison sentence and had multiple felony convictions. *Id.* at 246-48. Ms. Burrell did not testify; Investigator Scott testified he was "unable to locate her." TR, Vol. I, at 237; *see also* EH at 145-46.

## STANDARD OF REVIEW FOR HABEAS RELIEF

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). A petitioner is entitled to federal habeas relief only if the merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). "It is the petitioner's burden to make this showing and it is a

burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03.

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). Clearly established federal law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *See Owens*, 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's

4

application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted, emphasis in original). So, to qualify for habeas relief on this prong, a petitioner must show "'there was no reasonable basis' for the state court's determination." *Id.* at 1242-43 (citation omitted). "In other words, 'so long as fairminded jurists could disagree on the correctness of the state court's decision,' habeas relief is unavailable." *Id.* at 1243 (citation omitted); *see also Harrington*, 562 U.S. at 103 ("As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, a federal habeas court must "accept a state-court [factual] finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (citation omitted). In other words, when the state appellate court makes a factual finding, the Court presumes that determination to be correct; a petitioner can only rebut this presumption with clear and convincing evidence. *See id.* at 2199-2200; *see also* 28 U.S.C. § 2254(e)(1).

If the state appellate court has not addressed the merits of a claim, the Court exercises its independent judgment. *See Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) ("For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our 'independent judgment[.]'" (citation omitted)). In such a situation, the petitioner must show a constitutional violation by a preponderance of the evidence. *See Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964); *see also Sa'Ra v. Raemisch*, 536 F. App'x 783, 787-88 (10th Cir. 2013) ("Our independent judgment is affected by allocation of the underlying burden of persuasion.

5

That burden falls on the Petitioner, who must show a constitutional violation by a preponderance of the evidence.").

## ANALYSIS

### I. Petitioner's Claim Trial Counsel was Ineffective

#### A. Clearly Established Law

Under clearly established law, Petitioner must demonstrate his attorney's performance was deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). An attorney's performance is "deficient" if it falls "outside the wide range of professionally competent assistance." *Id.* at 690. Relevant to Petitioner's claim, *Strickland* requires a court to presume trial counsel had a sound trial strategy "when he decided not to call . . . a witness." *Hanson*, 797 F.3d at 828 (citation omitted). "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the *Strickland* standard is so general, the Court's review under § 2254(d) is "'doubly deferential.'" *Hanson*, 797 F.3d at 826 (citation omitted). That is, "[w]e defer both to counsel's strategic decisions about how best to represent his client and to the state court's determination that counsel's performance was not deficient." *Jackson v. Warrior*, 805 F.3d 940, 954 (10th Cir. 2015).

#### B. Petitioner's Ineffective Assistance Claim Relating to Gloria Wiggins

Petitioner first alleges his trial attorney was ineffective for failing to call Gloria Wiggins, his mother, as a witness. Doc. 1, at 5. In his amended direct appeal brief, Petitioner explained Ms. Wiggins would have testified Ms. Pasley was jealous and had threatened Petitioner on multiple occasions. Doc. 13, Ex. 6, at 10-11. Petitioner argued Ms. Wiggins' testimony would

6

have impeached Ms. Pasley's credibility by showing the witness had a "deep-seated animosity towards" Petitioner. *Id.* at 13, 17-18.

### 1. The Trial Court and OCCA Findings

During the evidentiary hearing, Petitioner's attorney testified he knew Ms. Wiggins wanted to testify about Ms. Pasley's alleged animosity towards Petitioner but he made a "tactical decision" not to call her as a witness. EH at 24-25, 28-29. According to the attorney, Ms. Wiggins' testimony would have been largely inadmissible hearsay and he believed Ms. Pasley's criminal background and animosity towards Petitioner were adequately presented to the jury. *Id.* at 27-29. Additionally, the attorney believed the jury would discount Ms. Wiggins' testimony based on her natural bias towards Petitioner, her son. *Id.* at 29. In sum, the attorney testified he did not think Ms. Wiggins' testimony "would add much of anything to [Petitioner's] case." *Id.*

In its Findings of Fact and Conclusions of Law, the trial court found Petitioner's attorney was mistaken in his belief Ms. Pasley had admitted any animosity towards Petitioner; in fact, Ms. Pasley had testified she did *not* have animosity towards Petitioner. Doc. 13, Ex. 5, at 13. However, the court found the attorney's "analysis that Ms. Wiggins' anticipated testimony concerning Pasley's relationship with [Petitioner] being based upon out-of-court conversations Ms. Wiggins had with Pasley was hearsay is correct[.]" *Id.* "This falls within the statutory definition of hearsay . . . . [And] . . . Ms. Wiggins' testimony [did not] fall within any of the hearsay exceptions." *Id.* In sum, the trial court found:

> Had [the attorney] attempted to offer the testimony of Ms. Wiggins describing her conversations with Pasley that Pasley held animosity toward [Petitioner], based upon the manner in which the evidence at trial developed, that testimony would have been met with objections by the State. Those objections being, first, that the testimony was hearsay, and second, it was improper impeachment. In either

7

instance, the objections would have been sustained[3] and the evidence would not have been admitted.

> Given the inadmissibility of Ms. Wiggins' testimony . . ., trial counsel's decision not to call her as a witness was an appropriate tactical trial decision, not because the issue had been covered, but because nothing would have been gained by putting a witness before a jury and then having that witnesses' testimony ruled inadmissible.

*Id.*; *see also id.* at 15 ("Given the fact that Ms. Wiggins' testimony was inadmissible, it was appropriate trial strategy to not call Ms. Wiggins as a witness.").

The OCCA concurred in relevant part, finding Ms. Wiggins' testimony would have largely been excluded as hearsay. *Id.*, Ex. 8, at 3. The state appellate court also found Petitioner's attorney engaged in reasonable trial strategy when he considered that Ms. Wiggins' natural bias towards her son could negatively impact the jury. *Id.* The OCCA held:

> In light of Wiggins' own credibility problems, and given that trial counsel correctly surmised that most of Wiggins' potential trial testimony would have been excluded as hearsay, trial counsel reasonably concluded that the remainder of Wiggins' testimony would not have undermined Pasley's credibility any more than it already had been undermined by information about her criminal history, drug use, and self-interested cooperation with law enforcement. Trial counsel's decision not to call Wiggins as a witness was, therefore, the result of sound trial strategy (i.e., one that falls within the wide range of reasonable professional assistance that may constitute constitutionally effective assistance of counsel).

*Id.* at 5 (citing *Strickland*, 466 U.S. at 689-90).

### 2. Analysis

The undersigned finds Petitioner's claim fails under the double deference standard. Based on the undisputed factual record, trial counsel believed – correctly, according to the

---

[3]The trial court found Petitioner's attorney "would have been precluded from offering Ms. Wiggins' testimony to contradict Pasley['s] denial of hard feelings or lack of animosity[,]" because "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witnesses' credibility, other than conviction of crime may not be proved by extrinsic evidence." Doc. 13, Ex. 5 at 14 (*citing* Okla. Stat. tit. 12, § 2608). The OCCA disagreed on this point. *Id.*, Ex. 8, at 3-4.

OCCA – that Ms. Wiggins' testimony would have been largely inadmissible, and he worried her obviously biased testimony could hurt Petitioner's case. Under such circumstances, the OCCA reasonably applied *Strickland* when it presumed trial counsel's decision not to call Ms. Wiggins as a witness was reasonable trial strategy. *See, e.g., Hanson*, 797 F.3d at 828 (holding attorney's "concern regarding Henry's credibility . . . provides a reasonable explanation for why he did not call Henry as a witness. We deem this to be sound trial strategy under *Strickland's* deferential standard."); *Livingston v. Kansas*, No. 09-3056-SAC, 2010 WL 890213, at *15 (D. Kan. Mar. 10, 2010) (unpublished order) (holding Kansas appellate court reasonably applied *Strickland* when it held trial counsel was not ineffective for failing to call witnesses, in part because petitioner had not "alleged any facts indicating their testimony would have amounted to anything other than inadmissible hearsay"), *certificate of appealability denied*, 407 F. App'x 267 (10th Cir. 2010).

### C. Petitioner's Ineffective Assistance Claim Relating to Franchascha Burrell

Petitioner also alleges his trial attorney was ineffective for failing to call Franschascha Burrell as a witness. Doc. 1, at 5. Reviewing the state court documents, it appears Ms. Burrell prepared an affidavit in July 2010 – approximately seven months after Petitioner's trial − stating she and Ms. Pasley *did not* purchase drugs from Petitioner. Doc. 13, Ex. 2, Attach. 2. Petitioner dropped this claim from his direct appeal and the OCCA did not rule on the question. *See supra* at 2. Regardless, this Court may deny the unexhausted claim on its merits. *See* 28 U.S.C. § 2254(b)(2); *Frye v. Raemisch*, 546 F. App'x 777, 781 (10th Cir. 2013) ("We may deny a claim on the merits even absent exhaustion."). In so doing, the Court uses its independent judgment, and Petitioner must show by a preponderance of the evidence that trial counsel was ineffective

9

for failing to call Ms. Burrell as a witness. *See supra* at 5-6. Petitioner has failed to carry his burden.

The State surmised before trial that Ms. Burrell would corroborate Ms. Pasley's testimony, and Petitioner's attorney had no reason to believe otherwise. OR at 59; EH at 51-52. Nevertheless, Petitioner's attorney attempted to locate Ms. Burrell before trial but was unable to do so. EH at 21-22. Likewise, after an extensive search, Investigator Scott could not locate the witness before trial, nor could he or a second investigator locate Ms. Burrell for the evidentiary hearing. *Id.* at 124-27, 141-42, 145-49.

Based on these facts, and Petitioner's conclusory allegations, the undersigned cannot say trial counsel was constitutionally deficient in failing to call Ms. Burrell as a witness. *See Snyder v. Addison*, 89 F. App'x 675, 681 (10th Cir. 2004) (holding petitioner's "conclusory allegations" that trial counsel failed to locate a witness was "insufficient to meet the prejudice prong of *Strickland*"); *Robinson v. Kansas*, No. 10-3082-MLB, 2011 WL 2118635, at *8 (D. Kan. May 27, 2011) (unpublished order) ("Trial counsel cannot be ineffective for the failure to call a witness when he attempted to find that witness and he could not be located."), *certificate of appealability denied*, 440 F. App'x 671 (10th Cir. 2011).

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Petition, Doc. 1, be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this report and recommendation by March 30, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and

recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge and terminates the referral.

Entered this 9th day of March, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE